UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| TARA LEE MANCHESTER AND BYRON MANCHESTER,<br><br>PLAINTIFFS<br><br>v.<br><br>CUMBERLAND COUNTY SHERIFF'S DEPARTMENT AND BRIAN ACKERMAN,<br><br>DEFENDANTS | CIVIL NO. 2:15-CV-473-DBH |

**DECISION AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

This case involves law enforcement actions that occurred during the arrest of Byron Manchester at his Casco home on November 19, 2013. Manchester and his former wife, Tara-Lee Campbell,[1] have alleged that detective Brian Ackerman and his fellow Cumberland County Sheriff deputies applied excessive force to both of them in violation of the Maine and United States Constitutions, the Maine Civil Rights Act, 42 U.S.C. § 1983, and state tort law, or failed to intervene to prevent the use of such force, and that the County has liability for failing to train its officers.[2] The defendants have moved for summary judgment. Construing the facts in a light most favorable to the plaintiffs, I conclude that the defendants

---

[1] Since filing this lawsuit, Tara-Lee Manchester has changed her last name to Campbell. See Affidavit of Tara-Lee Campbell (ECF No. 43-2). I will therefore refer to her as Tara-Lee Campbell.
[2] The amended complaint names the Sheriff's Department as a defendant, but the parties agreed at the Local Rule 56(h) Conference that the County itself is the proper defendant. Report of Pre-Filing Conference at 2 (ECF No. 33).

nevertheless are entitled to summary judgment on both plaintiffs' state tort law claims, both plaintiffs' claims that Cumberland County unconstitutionally failed to train its deputies, and Byron Manchester's (but not Tara-Lee Campbell's) claim of excessive force. However, there are genuine issues of material fact on the excessive force claims of Tara-Lee Campbell and the failure to intervene claims of Byron Manchester. I therefore **GRANT** the defendants' motion in part, and **DENY** it in part.

## FACTS

On November 19, 2013, the defendant Brian Ackerman, a detective for the Cumberland County Sheriff's Office, along with other law enforcement officers executed a search warrant on the property of Byron Manchester and Tara-Lee Campbell. See Defs.' Statement of Material Fact ¶ 1 (ECF No. 39) (Defs.' SMF); Pls.' Response to Defs.' Statement of Material Facts ¶ 1 (ECF No. 44) (Pls.' RSMF). The parties have presented considerably different accounts of the events that night. According to the plaintiffs, Ackerman was standing right next to Manchester as a group of law enforcement officers, including Assistant Team Leader Scott Jordan, Deputy Lucas Hallett, and John Fournier, dragged Manchester from his home and held him down on the ground. Pls.' RSMF ¶¶ 3–4. Also according to the plaintiffs, Ackerman dragged Campbell from her doorway over rocks and gravel, through her yard, and into the driveway. Pls.' RSMF ¶¶ 1–2.

According to the defendants, Ackerman did not use any physical force on either Manchester or Campbell during the execution of the search warrant on November 19, Ackerman did not observe any other officers use physical force on

the plaintiffs, Defs.' SMF ¶¶ 1–3, and neither Manchester nor Campbell can identify Ackerman as the one who dragged them across the ground or otherwise restrained them or stood by as they were allegedly being subjected to excessive force, Defs.' SMF ¶¶ 4–6.

**PROCEDURAL HISTORY**

The amended complaint asserted the following causes of action: (1) excessive force by Ackerman and failure to train by Cumberland County in violation of the Maine Civil Rights Act, 5 M.R.S. § 4682; (2) state law assault and battery by Ackerman under the Maine Tort Claims Act (MTCA), 14 M.R.S. § 8101; (3) Ackerman's failure to intervene to prevent excessive force; and (4) excessive force by Ackerman and failure to train by Cumberland County in violation of 42 U.S.C. § 1983. Pls.' First Am. Compl. (ECF No. 22). The plaintiffs sought leave to file a second amended complaint naming additional law enforcement officer defendants and enlarging their legal theories of relief (ECF No. 35), but I denied that motion in a written order (ECF No. 37).[3]

Following a Local Rule 56(h) Pre-Filing Conference (ECF No. 33), the defendants moved for summary judgment (ECF No. 38).

**ANALYSIS**

*1.    Assault and Battery Claims Against Ackerman (Count Two)*

The MTCA provides that "[w]ithin 180 days after any claim or cause of action permitted by this chapter accrues, or at a later time . . . when a claimant

---

[3] At the Local Rule 56(h) Pre-Filing Conference, the plaintiffs agreed that they would have until November 16, 2016 "to amend the First Amended Complaint to name any of the unknown Sheriff Officers as defendants." Report of Pre-Filing Conference 2 (ECF No. 33). Because I denied the plaintiffs' motion for leave to file a second amended complaint (ECF No. 37), their claims against the unknown Sheriff Officer defendants did not survive.

3

shows good cause why notice could not have reasonably been filed within the 180-day limit, a claimant . . . shall file a written notice" with the relevant governmental entity. 14 M.R.S. § 8107(1). A plaintiff cannot commence an action "against a governmental entity or employee . . . unless the foregoing notice provisions are substantially complied with." 14 M.R.S. § 8107(4); Deschenes v. City of Sanford, 2016 ME 56, ¶ 12, 137 A.3d 198 ("[F]ailure to comply with the notice provision bars the claim . . . .'" (quoting Cushman v. Tilton, 652 A.2d 650, 651 (Me.1995)).

The plaintiffs do not dispute that neither Ackerman nor Cumberland County was ever served with notice pursuant to 14 M.R.S. § 8107. Defs.' SMF ¶ 11; Pls.' SMF ¶ 11. Moreover, the plaintiffs do not argue that they have shown "good cause why notice could not have reasonably been filed within the 180-day limit." 14 M.R.S. § 8107(1); Peters v. City of Westbrook, 2001 ME 179, ¶¶ 5–10, 787 A.2d 141. Because the plaintiffs have not presented any arguments in opposition to the defendants' motion for summary judgment on the state law assault and battery claims or attempted to "tie [their] allegations to a tangible theory of recovery," they have waived any such arguments. Snyder v. Collura, 812 F.3d 46, 51 (1st Cir. 2016), cert. denied, 136 S. Ct. 2517 (2016).

As a result, the defendants are entitled to summary judgment on Count Two.

2. ***Failure to Train Claims Against Cumberland County (Count One, Maine Civil Rights Act; Count Four, 42 U.S.C. § 1983)***

The Supreme Court has ruled that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to

4

deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). To succeed on a failure to train claim against Cumberland County, the plaintiffs must show that (1) the "failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy,'" Canton, 489 U.S. at 389, and (2) "the deficiency in training actually caused" the excessive force violation, id. at 391. The Supreme Court has emphasized that "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." Id. at 390.

In the typical case, "the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training . . . is the 'moving force' behind the plaintiff's injury." Bd. of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown, 520 U.S. 397, 407–08 (1997) (quoting Canton, 489 U.S. at 389–91). In this case, the plaintiffs have advanced no evidence of a "pattern of tortious conduct" by Cumberland County deputies. But the Supreme Court has not "foreclose[d] the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." Connick v. Thompson, 563 U.S. 51, 64 (2011). In Canton, for example, the Supreme Court hypothesized that because "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons," the requirement to train officers on the proper use of deadly force "can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." 489 U.S. at 390 n.10.

But in this case, there was a policy and there was training. The plaintiffs do not dispute that the Cumberland County Sheriff's Office Standard Operating Procedure O-2, "Use of Force," was in effect from December 12, 2012 to October 15, 2015, thus including the November 2013 incident. Defs.' SMF ¶ 9; Pls.' RSMF ¶ 9; Cumberland County Sheriff's Office Standard Operating Procedure, Defs.' SMF, Ex. 2 (ECF No. 39-2) (Standard Operating Procedure). The policy provided the County's "guidelines on the limits of deputy's authority and the use of deadly and non-deadly force." Standard Operating Procedure at 1. Moreover, the plaintiffs do not dispute that Ackerman received training on this policy and the use of force. Defs.' SMF ¶ 10; Pls.' RSMF ¶ 10.

Instead, the plaintiffs' claim is that the Standard Operating Procedure "was not followed" on the November evening in question, and that "[t]he excessive use of force used against two compliant and terrified plaintiffs, reflect the officers were not trained in the procedures set forth by their own department." Pls.' Opp'n to Defs.' Mot. Summ. J. 19 (ECF No. 43). There is no other evidence of failure to train or failure to train adequately. Citing Canton, the plaintiffs argue that "the deputies, detectives, and various sheriffs' officers in this case exhibit such a lack of adherence to the actual language of their policies that it is logically inferred that they lacked proper training in the proper use of force." Pls.' Opp'n to Defs.' Mot. Summ. J. 19 (ECF No. 43).

That is not enough. Canton and Connick spoke of a failure to train. The plaintiffs here have no evidence of failure to train. They have only the events of November 19, 2013, from which they conclude that the training must not have been sufficient. But the Supreme Court has warned: "That a particular officer

may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." Canton, 489 U.S. at 390–91. "And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." Id. at 391.

On this record, the County is entitled to summary judgment on all claims against it.

### 3. *Excessive Force Claims Against Ackerman (Count One, Maine Civil Rights Act; Count Four, 42 U.S.C. § 1983)*

It is well-settled that "[e]xcessive force claims are founded on the Fourth Amendment right to be free from unreasonable seizures of the person." Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010); U.S. Const. amend. IV. To that end, "claims that law enforcement officers have used excessive force—deadly or not— in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[4] Graham v. Connor, 490 U.S. 386, 395 (1989). In other words, "to establish a Fourth Amendment excessive force violation, Plaintiffs must show not only that [the officer] employed force . . . but also that that level of force was objectively unreasonable under the circumstances." Fernandez-Salicrup v.

---

[4] In Count One, under the caption "Maine Civil Rights Act," the plaintiffs allege that "Ackerman and other unknown Sheriff Officers by their excessive use of force, violated Plaintiffs' right to due process as guaranteed by Article One, Section Six-A of the Maine Constitution." Pls.' First Am. Compl. ¶ 23 (ECF No. 16). Article One, section 5, concerning unreasonable searches and seizures may be a more appropriate citation, but in any event the plaintiffs present their entire argument on excessive force under federal law, and I shall therefore treat the state and federal excessive force arguments as the same. Claims brought under the Maine Civil Rights Act "are analyzed co-extensively" with section 1983 claims. Cady v. Walsh, 753 F.3d 348, 356 n.6 (1st Cir. 2014).

Figueroa-Sancha, 790 F.3d 312, 326 (1st Cir. 2015). Determining whether the officer exercised objectively unreasonable force involves "a fact-intensive inquiry that is highly sensitive to the circumstances of the particular case."[5] Jarrett v. Town of Yarmouth, 331 F.3d 140, 148 (1st Cir. 2003).

But here, the defendants argue that it is unnecessary to address the degree of force because the plaintiffs cannot identify Ackerman as the deputy who actually used the force of which they complain, and Ackerman has sworn that he did not use force on either plaintiff. Affidavit of Brian Ackerman ¶¶ 4–5 (ECF No. 39-3) (Ackerman Aff.). I reject the defendants' argument as to the plaintiff Campbell. It is true that at her deposition Campbell was unable to name the deputy who, she says, used excessive force in dragging her across the yard from the house to the driveway next to a shed. See Tara-Lee Campbell Dep. Tr. 32:24–34:10 (ECF No. 43-4) (Campbell Dep. Tr.). But Ackerman himself wrote in his report that he was the one who took her to the shed, Narrative Report of Brian Ackerman, Defs.' Ex. 1, at 3 (ECF No. 39-1) (Defs.' Ex. 1), and the reports of two other deputies on the scene confirm that Ackerman took her away from the residence, Pls.' Ex. 5, at 3, 5 (ECF No. 43-9). Ackerman denies any force ("I walked her over to a nearby shed next to the driveway where she sat down," Defs.' Ex. 1, at 3), but Campbell's deposition gives a different version of how she was moved from the house to the shed/driveway. See Campbell Dep. Tr. 32:24–34:25. Since the defendants have not argued that the degree of force was

---

[5] The defendants chose not to raise a qualified immunity defense. Defs.' Mot. Summ. J. 5 n.5 (ECF No. 38).

insufficient, only the lack of identification, summary judgment must be denied to the defendants on Campbell's claim of excessive force.[6]

The record is different for Manchester's excessive force claim against Ackerman. In his deposition, Manchester testified that law enforcement officers threw him to the ground and restrained him, but that he did not know whether Ackerman was one of the officers restraining him or if Ackerman was even present at the scene when Manchester was first thrown to the ground. Byron Manchester Dep. Tr. 43:12–45:10 (ECF No. 43-3) (Manchester Dep. Tr.). Manchester also said that the officers who restrained him all had masks on, but that Ackerman was not wearing a mask. Manchester Dep. Tr. 44:19–46:12. He further testified that he did not see whether Ackerman was one of the officers who dragged him out of his residence across rocks. Manchester Dep. Tr. 45:1–46:12. In his later affidavit, Byron Manchester stated that after four or five police officers threw him to the ground and placed handcuffs on him, he looked up and saw Brian Ackerman, the only officer not wearing a black ski mask or helmet with a black visor. Affidavit of Byron Manchester ¶¶ 17–18 (ECF No. 43-1) (Manchester Aff.). None of this evidence directly or indirectly contradicts Ackerman's affidavit that he did not use any physical force on Manchester. Ackerman Aff. ¶¶ 4–5.

Campbell's affidavit likewise does not contradict Ackerman's denial that he used physical force on Manchester. Her affidavit states that all the officers

---

[6] For this purpose, I do not rely upon Campbell's later affidavit, which the defendants argue I should not consider under Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4–5 (1st Cir. 1994), see infra 13.

9

except one were wearing black masks or helmets with dark visors, Affidavit of Tara-Lee Campbell ¶ 15 (ECF No. 43-2) (Campbell Aff.), that four or five officers slammed Manchester to the ground, hauled him out of the house, and handcuffed him, while the one unmasked officer was at the door, yelling instructions to the other officers, and "did nothing to intervene or to stop the aggressive force used against Byron." Campbell Aff. ¶¶ 16–17, 19. Campbell also stated that although she did not know Ackerman's name, she "could recognize this officer throughout the raid on my house because he was the only one not wearing a mask." Campbell Aff. ¶ 38. None of this supports the assertion that Ackerman himself used physical force on Manchester.[7] There is no genuine issue of material fact on that question.

The defendant Ackerman is entitled to summary judgment on the excessive force claims of Byron Manchester in Counts One and Four, but not on the excessive force claims of Tara-Lee Campbell.

### 4. *Failure to Intervene Claims Against Ackerman (Count Three)*

"'[A]n officer who is present at the scene [of an arrest] and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance,' provided that he had a 'realistic opportunity' to prevent the other officer's actions." Martinez v. Colon, 54 F.3d 980, 985 (1st Cir. 1995) (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n.3 (1st Cir.1990)). The plaintiffs contend that Ackerman is liable under this theory because he was on the scene when other officers used

---

[7] I consider separately whether it bears on the claim of failure to intervene.

excessive force against Manchester and Campbell and did nothing to prevent it. Pls.' Opp'n to Defs.' Mot. Summ. J. 22–25 (ECF No. 43). But according to Ackerman's affidavit, he "did not observe any officers use any physical force of any sort on either Byron Manchester or Tara Lee Manchester," Ackerman Aff. ¶ 6, and that when he approached the residence, Manchester already "was laying face down on the ground just outside the main door of the residence," Defs.' Ex. 1, at 3.

Because Ackerman is the officer who, the plaintiffs say, used excessive force against Campbell, he cannot be liable for failure to intervene in her case. There is no suggestion that someone else applied excessive force to Campbell in Ackerman's presence.

As for Manchester, according to the plaintiffs "Brian Ackerman was standing right next to Byron when Byron was being held down on the ground by other officers." Pls.' RSMF ¶ 3. In support, the plaintiffs cite the reports of Jordan, Hallett, and Fournier, the deposition of Byron Manchester, and the affidavits of Tara-Lee Campbell and Byron Manchester. Pls.' RSMF ¶¶ 3–4.

Jordan's report does not mention Ackerman at all. Pls.' Ex. 5, at 1–2 (ECF No. 43-9). The Hallett and Fournier reports both state in identical detail that Ackerman "brought [the female] away from the residence while I stayed with [Byron Manchester]," and that "[a]s soon as the team announced the residence clear, I brought Byron over to Det. Ackerman who conducted an interview with him in his car." Id. at 3, 5. Thus, these three accounts do not contradict Ackerman's statement that he did not see physical force applied to Manchester or Campbell.

11

At Byron Manchester's deposition, when questioned if he "physically saw Brian Ackerman there when other members of the SWAT team put you on the ground," Manchester responded, "Not at that time, no. After, after, once I kept hollering to them, what do you want, is when I finally saw him." Manchester Dep. Tr. 44:1–6. Asked again if he knew "whether or not [Ackerman] was there when you say members of the SWAT team threw you on the ground," Manchester continued, "No, I wouldn't have a chance to tell you who was there, they grabbed me so fast and threw me on the ground."[8] Id. at 44:7-11. Even a liberal interpretation of Byron Manchester's deposition does not lead to the plaintiffs' proposed factual conclusion that "Brian Ackerman was standing right next to Byron when Byron was being held down on the ground by other officers." Pls.' RSMF ¶ 4.

That leaves the two affidavits (Manchester's and Campbell's) to consider.

Manchester's affidavit, filed after the defendants moved for summary judgment, states that other officers knelt on his back and legs and handcuffed him while he was on his stomach on the ground, then proceeded to drag him away from his doorway into the front yard, and "when I looked up I saw Brian Ackerman walking past where I was laying, moving towards the front door." Manchester Aff. ¶ 18. This affidavit, like Manchester's deposition testimony and the twin reports of Hallett and Fournier, places Ackerman in the general location, but does not show that he observed excessive force and had the opportunity to stop it. "[M]ere presence at the scene, without more, does not by some

---

[8] He gave that follow-up testimony in clarification of an earlier statement that Ackerman was "standing right close," Manchester Dep. Tr. 43:20–25.

mysterious alchemy render him legally responsible under section 1983 for the actions of a fellow officer." Calvi v. Knox Cnty., 470 F.3d 422, 428 (1st Cir. 2006).

Campbell's affidavit, also filed after the summary judgment motion, says that one officer (by inference, Ackerman as the only officer not working a mask or helmet) "was at the door at the time Byron was thrown to the ground and I could hear him yelling instructions to the other officers. . . . Never did the unmasked officer ever intervene to stop the violence being perpetrated against Byron by the other officers." Campbell Aff. ¶ 19. That statement could support a failure to intervene claim against Ackerman. But the defendants argue that I should ignore the affidavit because it is contrary to Campbell's earlier deposition testimony. According to the First Circuit, "[w]hen an interested witness has given clear answers to unambiguous questions [at a deposition], he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4–5 (1st Cir. 1994). I turn therefore to Campbell's deposition. At her deposition, Campbell was questioned only by defense counsel. She gave no testimony then that Ackerman was at the door when Byron Manchester was thrown to the ground or able to "intervene to stop the violence." See Campbell Dep. Tr. 31:12–33:8, 35:1–19. But she was never asked that question, and I see no testimony in her deposition that is clearly contradictory to the challenged statement in her affidavit. Consequently I do credit Campbell's statement in her affidavit, and doing so creates a genuine issue of material fact on Manchester's failure to intervene claim against Ackerman.

13

Ackerman is entitled to summary judgment on Campbell's, but not on Manchester's, failure to intervene claim.

### 5. *Arguments about the Search Warrant*

At the Local Rule 56(h) Pre-Filing Conference, the plaintiffs made clear that their federal claim in Count Four "asserted only an excessive force claim, and not an illegal search claim," and is "relevant only to the extent it provided grounds for the officers' use of force." Report of Pre-Filing Conference 1 (ECF No. 33). I therefore do not entertain that part of their current objection to the defendants' motion for summary judgment that attempts to argue that Ackerman used "false statements and a reckless disregard for the truth" to obtain the search warrant, Pls.' Opp'n to Defs.' Mot. Summ. J. 19–20, 25–28 (ECF No. 43), exceeded the scope of the warrant, id. at 28-30, or received inadequate training on the scope of a warrant, id. at 19–22. The plaintiffs have waived such arguments.

## CONCLUSION

I therefore **GRANT** the defendants' motion for summary judgment on all but the plaintiff Tara-Lee Campbell's claim for excessive force and the plaintiff Byron Manchester's claim for failure to intervene against Ackerman, and on those two claims the motion is **DENIED.**

**SO ORDERED.**

**DATED THIS 10TH DAY OF MAY, 2017**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**